**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deoncea O'Neal, et al., | No. CV-16-00056-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| America's Best Tire LLC, et al., | |
| Defendants. | |

This case involves a dispute as to whether Defendants, a group of tire stores and their individual owners, violated the Fair Labor Standards Act ("FLSA") by failing to pay their tire porters, crew members, and tire technicians the statutory premium for overtime work.  One group of Defendants moves for summary judgment, arguing that the case against them is moot because they have tendered back wages and liquidated damages to the named Plaintiffs.  Doc. 19.  Plaintiffs separately move for conditional certification of the matter as a collective action.  Doc. 25.  Each motion has been fully briefed (Docs. 26, 28, 29, 30, 32) and the Court heard oral arguments on May 26, 2016.  For the reasons that follow, the Court will deny the motion for summary judgment and grant the motion for conditional certification.

**I.      Background.**

   **A.      The Parties.**

      Defendants are (1) approximately 25 limited liability companies, at least some of which own and operate tire stores under the name America's Best Tires (the "ABT companies" or "ABT"); (2) Andrew Dees, an individual who owned all of the ABT companies until September 2013 and continued to own 10 companies until April 2016; and (3) Travis M. Dees, Andrew's cousin, who purchased 14 ABT companies from Andrew in September 2013 and has owned them since.[1]  *See* Docs. 1, ¶¶ 18-45; 28-1, ¶¶ 2-3; 29-1, ¶¶ 1, 10.  Plaintiffs allege that all of the corporate defendants are part of a single "enterprise," as that term is defined at 29 U.S.C. § 203(r).  *See* Doc. 1, ¶ 46. Defendants dispute this, arguing that Andrew's companies[2] and Travis's companies[3] are separate enterprises that share no corporate policies.  *See* Doc. 29.  Andrew, his wife, and his companies ("AD Defendants") are represented by different counsel than Travis and his companies ("TD Defendants").

      Plaintiff Deoncea O'Neal worked for ABT from approximately May 2012 to approximately December 2014.  Doc. 1, ¶ 8.  Plaintiff Ryan White worked for ABT from approximately April 2012 to approximately February 2014.  ¶ 11.  O'Neal and White ("Named Plaintiffs") were responsible for cashiering, installing tires, washing and

---

[1] Both Andrew's wife and Travis's wife are also named as Defendants, although Travis appears to be single.  Doc. 28-1, ¶ 1.  The number of ABT companies that will participate in this case is unclear, as two companies – America's Best Tire 101, LLC and AZ Best Automotive, LLC – have not been served.

[2] Andrew's companies are: (1) AZ Best Automotive, LLC; (2) AZ Best Tire 4097, LLC; (3) Arizona Best Tire Services, LLC; (4) AZ Best Tire 3902, LLC; (5) AZ Best Tire, LLC; (6) AZ Best Tire 7048, LLC; (7) AZ Best Tire 8334, LLC; (8) Arizona Best Mobile Tire Services, LLC; (9) AZ Best Tire & Auto 1335, LLC; and (10) AZ Best Tire 5201, LLC.  Doc. 29 at 2.

[3] Travis's companies are: (1) America's Best Tire Employment Services, LLC; (2) America's Best Tire, LLC; (3) America's Best Tire 203, LLC; (4) America's Best Tire Buckeye, LLC; (5) America's Best Tire Glendale, LLC; (6) America's Best Tire Grand, LLC; (7) America's Best Tire Mesa, LLC; (8) America's Best Tire Peoria, LLC; (9) America's Best Tire Van Buren, LLC; (10) America's Best Transportation Services, LLC; (11) America's Best Wholesale Tire, LLC; (12) America's Best Wholesale Tire LV, LCC; (13) America's Best Wholesale Tire Tucson, LLC; and (14) Camelback Automotive Repair, LLC.  Doc. 28 at 1.

painting tires, stacking tires in the yard, organizing tires, cleaning the shop, doing yard work, and generally helping customers.  ¶¶ 9.  Named Plaintiffs each worked at four different ABT locations during their employment – in Mesa, Phoenix, Peoria, and Glendale.   Docs. 25-1, ¶ 24; 25-2, ¶ 23.   Named Plaintiffs aver that ABT's payment practice was the same at each location, and that they were never paid overtime premiums while employed by ABT.  Docs. 25-1, ¶¶ 24, 27, 30; 25-2, ¶¶ 23, 26, 29.

### B.    The FLSA.

The FLSA provides, with exceptions not relevant here, that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Employers who violate this provision "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  § 216(b).

An action for unpaid overtime compensation "may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  § 216(b).  "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.*

### C.    Prior Litigation.

This is not the first FLSA action against ABT.  In *Bush v. America's Best Tires, LLC*, No. 2:15-cv-01261-SRB (D. Ariz.), two former tire porters sued ABT for unpaid overtime premiums allegedly owing for work performed between 2012 and 2015.  *Bush*, Doc. 1.  America's Best Tires Mesa, LLC tendered an offer of judgment to the plaintiffs, who accepted.  *Bush*, Doc. 15.  Defendants neither admitted nor denied liability in their offer.  *Id.*

## II.     Summary Judgment.

TD Defendants admit, for purposes of their summary judgment motion, that they violated the FLSA by failing to pay Plaintiffs a premium for overtime hours worked at ABT.  Doc. 19 at 2.  TD Defendants further admit that they are liable for unpaid overtime compensation and liquidated damages.  *Id.* at 4.  They contend that they have paid Plaintiffs an amount equal to this liability, and argue that this payment moots Plaintiffs' claims.  *Id.*

Plaintiffs respond that they have not accepted the payment offered by TD Defendants.  Doc. 26 at 4 n.2.  Plaintiffs' attorney provides a declaration stating that "Plaintiffs to this day have not accepted, cashed, nor deposited" the checks tendered by TD Defendants.  Doc. 26-1, ¶ 13.  TD Defendants provide no evidence to the contrary.

TD Defendants cite *Unan v. Lyon*, No. 2:14-cv-13470, 2016 U.S. Dist. LEXIS 2702, at *15-17 (E.D. Mich. Jan. 11, 2016), for the proposition that tender of payment is sufficient to establish payment, "whether the checks were cashed or not."  Doc. 30 at 7. *Unan* does not remotely support this proposition.  The defendants in *Unan* unilaterally enrolled the plaintiffs in the Medicaid program they were suing to enter, and argued that this mooted the plaintiffs' claim.  *Id.* at *16.  The court rejected this argument, holding that "Defendant may not evade litigation simply by providing full Medicaid benefits to the named Plaintiffs" where "Plaintiffs did not have an opportunity to accept or reject a tender."  *Id.* at *18.  Thus, *Unan* actually supports Plaintiffs' position that a defendant cannot moot a plaintiff's claim by unilaterally providing a remedy.[4]

At oral argument, TD Defendants also pointed to *M.M. v. Lafayette School District*, Nos. 12-15769, 12-15770, 2014 U.S. App. LEXIS 18979 (9th Cir. Oct. 1, 2014).

---

[4] Although it is unclear from the briefing, TD Defendants may be relying on the following parenthetical in *Unan*: "*Cf. Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (holding, in the context of a collective action seeking damages under the FLSA, that a tender of all damages alleged mooted a plaintiff's claim . . .)."  This parenthetical mischaracterizes the Supreme Court's holding and is thus of no aid to TD Defendants.  *See Symczyk*, 133 S. Ct. 1523, 1528-29 ("while the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do not reach this question, or resolve the split, because the issue is not properly before us.").

In that case, the parents of a child with learning disabilities claimed that their child's school district had violated the Individuals with Disabilities Education Act by failing to conduct an independent educational evaluation for the child. *Id.* at *4. The parents paid for their own evaluation, and sought to recover the cost from the District. *Id.* *13. The court dismissed the claim as moot based on evidence that the district had already reimbursed the plaintiffs for the full cost of the evaluation. *Id.* at *33. *Lafayette* thus stands for the proposition that payment of a claim in full moots the claim. But since there is no indication that the plaintiffs in *Lafayette* refused the district's reimbursement, this case does not support TD Defendant's position that tender of a check is sufficient to establish payment, even when the tender is not accepted.

TD Defendants cite no other authority for the proposition that payment can occur without the payee's acceptance. That proposition is contrary to the ordinary meaning of the term "payment." *See, e.g.*, Black's Law Dictionary (2014 ed.) (defining "payment" as "[p]erformance of an obligation by the delivery of money or some other valuable thing *accepted* in partial or full discharge of the obligation") (emphasis added). The Court therefore concludes that Plaintiffs have not been paid.

Plaintiffs have received and rejected an offer of judgment. This did not moot their claims. As the Supreme Court recently explained:

> Under basic principles of contract law, [a defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy. Absent [plaintiff's] acceptance, [defendant's] settlement offer remained only a proposal, binding neither [defendant] nor [plaintiff]. Having rejected [defendant's] settlement bid, and given [defendant's] continuing denial of liability, [plaintiff] gained no entitlement to the relief [defendant] previously offered.

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670-71 (2016). On the basis of this reasoning, the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672. The Ninth Circuit has reached a similar conclusion, holding that "a claim becomes moot when a plaintiff *actually receives* complete relief on that claim, not merely when that relief is offered or tendered." *Chen v. Allstate Ins. Co.*, No. 13-16816, 2016 WL 1425869, at *1 (9th Cir. Apr. 12, 2016)

1    (emphasis in original).

2        Plaintiffs have not accepted the checks tendered by Defendants.  As a result, the

3    parties remain adverse and retain the same stake in the litigation they had at the outset.

4    *Id.* at 670-71.  TD Defendants' motion for summary judgment will be denied.[5]

5    **III.    Class Certification.**

6        Pursuant to 29 U.S.C. § 216(b), Plaintiffs move to conditionally certify this matter

7    as a collective action.  Doc. 25.  The proposed class includes:

8        all of Defendants' current and former tire porters, crew members, and/or
9        tire technicians – employees who worked for Defendants, and who were
         compensated on an hourly basis, and who were not paid one-and-one-half
10       times their regular rate of pay for all time worked in excess of 40 hours in a
         given workweek, at any time starting three years before this lawsuit was
11       filed up to the present.

12   *Id.* at 4-5.

13       Certification of a collective action under the FLSA is appropriate where the named

14   plaintiffs and members of the proposed class are "similarly situated."   29 U.S.C.

15   § 216(b).  "Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined

16   the term 'similarly situated.'"   *Talavera v. Sun-Maid Growers of Cal.*, No. 1:15-CV-

17   00842-DAD-SAB, 2016 WL 1073253, at *2 (E.D. Cal. Mar. 18, 2016) (citation and some

18   quotation marks omitted).  Courts generally follow an ad hoc, two-step approach for

19   determining whether certification is appropriate.  *Id.*  At the first step, the question is

20   whether to conditionally certify the proposed class to allow the named plaintiffs to notify

21   potential class members of their right to opt-into the lawsuit.  *Id.*  At this step, "the court

22   requires little more than substantial allegations, supported by declarations or discovery,

23   that 'the putative class members were together the victims of a single decision, policy, or

24   plan.'"  *Id.*  (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.

25

26       [5] At oral argument, TD Defendants expressed concern that Plaintiffs might carry
27   on the case for the sole purpose of increasing the attorney fee award.  The Court is
     sympathetic to TD Defendants' concern, but sees no indication at this time that Plaintiffs
28   are unreasonably extending the litigation for the purpose of increasing their fee award.  If
     it appears at a later date that Plaintiffs have unreasonably extended the litigation for this
     purpose, the Court will reduce their fee award accordingly.

2001)); *see also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (at conditional certification stage, "Plaintiffs' burden is light," and can be carried by identifying some "factual or legal nexus [that] binds together the various claims of the class members"). If a class is conditionally certified, the second step is to permit the defendant to move for decertification after discovery is completed. *Talavera*, 2016 WL 1073253, at *2. "If the court finds that the plaintiffs are not similarly situated at that step, the court may decertify the class and dismiss opt-in plaintiffs without prejudice." *Id.* (citations and quotation marks omitted).

TD Defendants argue that conditional certification is not appropriate because Plaintiffs have not established that ABT had a company-wide practice of withholding overtime compensation for its tire porters. Doc. 28 at 1. The Court does not agree. As noted above, Plaintiffs must provide only "substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Talavera*, 2016 WL 1073253, at *2. Plaintiffs have each provided a declaration stating that (1) they observed ABT distributing paychecks at four different ABT locations; (2) they observed ABT providing tire porters with two envelopes, one containing a check for regular hours and one containing cash for overtime hours; (3) they compared cash payments with other porters; (4) their cash payments never included overtime premiums; and (5) they believe that ABT had a practice of withholding overtime premiums from its tire porters. Docs. 25-1, ¶¶ 24, 27; 25-2, ¶¶ 23, 26. From this evidence, the Court can reasonably infer that "the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

In arguing that Plaintiffs have not produced sufficient evidence of a company-wide practice, TD Defendants rely heavily on *Colson v. Avnet*. In *Colson*, the plaintiff sought to certify a nationwide class including all Sales and Marketing Representatives ("SMRs") employed by Avnet, the defendant employer. 687 F. Supp. 2d at 917. The plaintiff provided a declaration detailing FLSA violations she experienced while working as an SMR in Avnet's Oregon office. *Id.* at 929. The court found this declaration

- 7 -

insufficient to support nationwide certification because it focused only on one of Avnet's 40 locations. *Id.* at 927. The court was not persuaded by the portion of the declaration dealing with SMRs elsewhere in the nation because it was "based on nothing more than [the plaintiff's] opinions, which [were] vague and appear[ed] to be based on unspecified hearsay from unidentified sources." *Id.* at 928.

*Colson* is easily distinguishable. Unlike Avnet, a large corporation with 40 offices nationwide, ABT is a small corporation owned and managed by one or two individuals, with no offices outside Arizona. Unlike *Colson*, where the plaintiff's allegations were based on her experience in a single office, Named Plaintiffs' allegations are based on their experiences at four ABT locations. Finally and most importantly, the key portions of Named Plaintiffs' declarations are based on their personal observations, which was not the case in *Colson*. *See* Docs. 25-1, ¶ 24; 25-2, ¶ 23. Thus, *Colson* does not alter the Court's conclusion that Plaintiffs are entitled to conditional certification.

TD Defendants make two additional arguments. First, TD Defendants argue that Named Plaintiffs are not similarly situated to other class members because they have been paid all of the damages they are owed. Doc. 28 at 5. The Court has already concluded that Named Plaintiffs have not been paid. Second, TD Defendants point to Travis Dee's declaration, which states that he has taken steps to identify and compensate each tire porters who was denied overtime premiums. Doc. 28-1, ¶ 6. Based on this declaration, TD Defendants argue that the potential class members' claims are likely moot. Doc. 28 at 5. But the declaration does not specify what steps Travis took to identify and compensate the individuals who were denied overtime premiums or how many individuals have been identified and compensated. Nor do TD Defendants provide other evidence that these individuals have been compensated. The Court is therefore unable to conclude that TD Defendants have compensated all potential class members.

AD Defendants argue that conditional certification is inappropriate because they have not owned any tire companies since September 2013. Doc. 29 at 6. They present evidence that: (1) Andrew sold all of his tire stores to Travis in September 2013; (2) all of

Andrew's remaining companies ceased operation by September 2013; and (3) Andrew and Travis did not coordinate payment practices before or after the sale.  Doc. 29-1, ¶¶ 10, 14, 15.  But Plaintiff O'Neal has presented evidence that he was hired by Andrew Dees in May of 2012, that he saw Andrew at various stores directing employees, that he worked with Andrew at one of the stores in June of 2014, and that he saw Andrew at all four of the stores where he worked.  Doc. 25-1, ¶¶ 5, 7, 10.  O'Neal worked at three stores that were owned by Andrew (*compare id.*, ¶ 32 *with* Doc. 29 at 5), and asserts that he worked overtime – and was not paid a premium for it – every week of his employment (Doc. 25-1, ¶ 30).  Plaintiff White provides similar evidence.  Doc. 25-2, ¶ 7.  Plaintiffs also note that the purchase agreement between Andrew and Travis Dees called for Andrew to remain on the payroll and to have continuing management responsibilities, such as the ability to veto store sales and changes in marketing strategies.  *See* Doc. 29-1 at 51-56.  All of this evidence creates a factual dispute as to whether Andrew in fact was involved in the management of ABT during times when Named Plaintiffs worked there.  Because Plaintiffs are seeking only conditional certification, this is not the time to resolve factual disputes.  *Colson*, 687 F. Supp. 2d at 926 ("[I]n making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action.  It is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits . . . at the preliminary certification stage of an FLSA collective action.") (citations omitted).

AD Defendants also argue that conditional certification is inappropriate as to them because: (1) 29 U.S.C. § 255(a) establishes a two-year statute of limitations for claims based on non-willful violations of the FLSA; (2) Plaintiffs' have not alleged that AD Defendants willfully violated the FLSA; and (3) AD Defendants have not owned any tire companies since September 2013.  Doc. 29 at 13.  This argument goes to the merits of the claims against AD Defendants, not to the factual question of whether Plaintiffs are similarly situated to individuals who worked for AD Defendants prior to September 2013.  "[C]ourts do not review the underlying merits of the action" in ruling on a motion

1    for conditional certification under the FLSA. *Colson*, 687 F. Supp. 2d at 926 (collecting

2    cases). AD Defendants can reurge these arguments at the summary judgment stage.

3    **IV.    Information Disclosure and Form of Notice.**

4         Plaintiffs ask the Court to enter an order (1) requiring Defendants to produce,

5    within 10 days, the contact information, driver's license numbers, social security

6    numbers, and dates of employment of all tire porters who worked for Defendants between

7    January 11, 2013 and January 11, 2016; (2) authorizing Plaintiffs to mail the proposed

8    Notice and Consent form (Doc. 25-4) to all potential class members via regular mail and

9    email; (3) authorizing Plaintiffs to hire a third party administrator to send the notices;

10   (4) allowing potential class members to execute their consent forms electronically; and

11   (5) authorizing Plaintiffs to resend the notice to class members who have not responded

12   to the first notice within thirty days. Doc. 25 at 17.

13        With respect to Plaintiffs' first request, Defendants object that providing potential

14   class members' social security numbers, driver's license numbers, and phone numbers

15   would violate their employee's privacy. Docs. 28 at 7; 29 at 14. They also object that 10

16   days is too little time to gather the requested information, and request 30 days for this

17   purpose. *Id.* In the Court's experience, allowing plaintiffs to access the last four digits of

18   potential class members' social security number properly balances the class members'

19   privacy interests with the public policy interest in facilitating contact with as many class

20   members as possible. The Court will therefore order Defendants to produce the last four

21   digits of potential class members' social security numbers. The Court will also order

22   Defendants to produce the driver's license numbers of potential class members, which

23   will allow Plaintiffs to conduct a Department of Motor Vehicles search to locate

24   individuals who may have moved since their employment with ABT. The Court will not

25   order Defendants to produce employee phone numbers, which do not appear necessary to

26   locate potential class members.

27        TD Defendants also ask for various modifications to the proposed Notice and

28   Consent form. Specifically, TD Defendants ask for (1) removal of the Notice's header,

which reads "United States District Court for the District of Arizona"; (2) modification of a sentence which states that "you were not paid"; (3) inclusion of a statement advising potential class members that "By joining this case, you may be required to respond to written discovery, appear for a deposition and/or testify at trial"; and (4) inclusion of a disclaimer stating that "The Court has not made any determination on the merits and the authorization to distribute this notice does not mean that the Plaintiffs have prevailed or will prevail on this matter."   Doc. 28 at 8.   Plaintiffs do not object to any of these proposed modifications in their reply, and the Court concludes that these modifications, which largely track those ordered in *Kesley v. Entertainment U.S.A., Inc.*, 67 F. Supp. 3d 1061, 1074 (D. Ariz. 2014), are reasonable.   The Court will therefore require Plaintiffs to remove the Notice's header, replace the words "you were not paid" with the words "you may not have been paid," and include the advisement and disclaimers referred to above.

TD Defendants object that hiring a third party administrator would unnecessarily increase costs.   Doc. 28 at 7-8.   They argue that hiring such an administrator is unnecessary given the relatively small size of the class, which they anticipate will include fewer than 100 individuals.   *Id.*   In the Court's experience, however, hiring a third party administrator often results in cost reductions.   Therefore, the Court will not prohibit Plaintiffs from hiring a third-party administrator.

Defendants do not object to allowing potential class members to execute the consent forms electronically.   The Court will therefore allow this method of execution.

Defendants object that Plaintiffs should not be permitted to resend their notice, since they will already be sending it via email and regular mail.   Docs. 28 at 8; 29 at 14.   Plaintiffs argue that "reminder notices" are important because they reduce the likelihood that interested class members will simply overlook the notice.   Doc. 25 at 15.   As Plaintiffs note, other courts have permitted reminder notices in similar cases.   *See, e.g., Gee v. Suntrust Mortg., Inc.*, No. C-10-1509-RS, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel shall send by First Class mail the notice and consent form to each member of the prospective class within two weeks of receipt of the contact

information from SunTrust.  Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("Vector contends that sending the postcard reminder notice after the class notice is harassing.  The Court does not agree.  Particularly since the FLSA requires an opt-in procedure, the sending of a postcard is appropriate.").  The Court agrees with Plaintiffs, and will allow them to send reminder notices to individuals who have not responded within 30 days of the date the original notice is sent.

**IT IS ORDERED:**

1.     TD Defendants' motion for summary judgment (Doc. 19) is **denied**.

2.     Plaintiffs' motion for conditional certification (Doc. 25) is **granted**.  The Court conditionally certifies this matter as a collective action under 29 U.S.C. § 216(b) with respect to all current and former tire porters, crew members, and tire technicians who worked for Defendants at any time from January 11, 2013 to the present (the "potential class members").

3.     Defendants shall produce, within 30 days of this order, the mailing addresses, email addresses, driver's license numbers, and partially redacted social security numbers of all potential class members.

4.     Plaintiffs are authorized to provide notice to all potential class members.  Notice shall be given in the form attached to Plaintiffs' motion as modified below.  Plaintiffs are authorized to make an initial and a follow-up mailing to these members of the conditional class.  Individuals receiving notice will be required to opt-in to the class on or before August 5, 2016.  All expenses of the notice shall be borne by Plaintiffs.

5.     Plaintiffs shall modify the Notice and Consent Form by (1) removing the header which reads "United States District Court for the District of Arizona"; (2) replacing the words "you were not paid" with the words "you may not have been paid"; (3) adding the following statement:  "By joining this case, you may be required to respond to written discovery, appear for a deposition and/or testify at trial"; and (4) adding the following statement: "The Court has not made any determination on the

merits and the authorization to distribute this notice does not mean that the Plaintiffs have prevailed or will prevail on this matter."

Dated this 2nd day of June, 2016.

David G. Campbell
United States District Judge