**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deoncea O'Neal, et al., | No. CV-16-00056-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| America's Best Tire LLC, et al., | |
| Defendants. | |

Plaintiffs Deoncea O'Neal and Ryan White, individually and on behalf of the 12 opt-In Plaintiffs, obtained a $30,000 settlement from Defendants in this FLSA case. They now ask the Court to award them more than $147,000 in attorneys' fees and costs. Doc. 74.  The motion is opposed and fully briefed.  Docs. 75, 76, 77.  No party requests oral argument.  For the reasons set forth below, the Court will grant the motion in part and deny it in part.

**I.     Background.**

Plaintiffs claimed in this case that Defendants, a group of tire stores and their individual owners, violated the Fair Labor Standards Act ("FLSA") by failing to pay their tire porters, crew members, and tire technicians the statutory premium for overtime work. Defendants are approximately 25 limited liability companies, at least some of which own and operate tire stores under the name America's Best Tires (the "ABT companies" or "ABT"); Andrew Dees, an individual who owned all of the ABT companies until

September 2013 and continued to own 10 companies until April 2016; and Travis M. Dees, Andrew's cousin, who purchased 14 ABT companies from Andrew in September 2013 and has owned them since. *See* Doc. 1, ¶¶ 18-45; Doc. 28-1, ¶¶ 2-3; Doc. 29-1, ¶¶ 1, 10. Andrew, his wife, and his companies[1] (the "AD Defendants") are represented by different counsel than Travis and his companies[2] (the "TD Defendants").

Plaintiff Deoncea O'Neal worked for ABT from approximately May 2012 to December 2014. Doc. 1, ¶ 8. Plaintiff Ryan White worked for ABT from approximately April 2012 to February 2014.

Plaintiffs filed this action in January 2016. Doc. 1. In March 2016, the TD Defendants moved for summary judgment, admitting that they violated the FLSA by failing to pay Plaintiffs a premium for overtime hours and that they were liable for unpaid overtime compensation and liquidated damages, but arguing that the case against them was moot because they tendered back wages and liquidated damages to the named Plaintiffs. Doc. 19. Plaintiffs argued in response that they never accepted the payment offered by the TD Defendants. Doc. 26 at 4 n.2. The Court determined that summary judgment was inappropriate because Plaintiffs had not accepted the checks tendered by the TD Defendants, and the parties remained adverse. Doc. 36 (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670-71 (2016)).

Following the denial of summary judgment, Defendants asked the Court to require Plaintiffs to post a bond to ensure payment of costs in the event Defendants prevailed.

---

[1] Andrew's companies are: (1) AZ Best Automotive, LLC; (2) AZ Best Tire 4097, LLC; (3) Arizona Best Tire Services, LLC; (4) AZ Best Tire 3902, LLC; (5) AZ Best Tire, LLC; (6) AZ Best Tire 7048, LLC; (7) AZ Best Tire 8334, LLC; (8) Arizona Best Mobile Tire Services, LLC; (9) AZ Best Tire & Auto 1335, LLC; and (10) AZ Best Tire 5201, LLC. Doc. 29 at 2.

[2] Travis's companies are: (1) America's Best Tire Employment Services, LLC; (2) America's Best Tire, LLC; (3) America's Best Tire 203, LLC; (4) America's Best Tire Buckeye, LLC; (5) America's Best Tire Glendale, LLC; (6) America's Best Tire Grand, LLC; (7) America's Best Tire Mesa, LLC; (8) America's Best Tire Peoria, LLC; (9) America's Best Tire Van Buren, LLC; (10) America's Best Transportation Services, LLC; (11) America's Best Wholesale Tire, LLC; (12) America's Best Wholesale Tire LV, LCC; (13) America's Best Wholesale Tire Tucson, LLC; and (14) Camelback Automotive Repair, LLC. Doc. 28 at 1.

Doc. 44. The Court denied the motion, stating that "Defendants have not shown that Plaintiffs are unlikely to succeed on the merits. They argue that the named Plaintiffs are unlikely to obtain damages beyond those included in the offer of judgment, but they ignore entirely the prospect that Plaintiffs might succeed on the merits by proving their collective action claims." Doc. 51 at 3.

Thereafter, the Parties reached a settlement and filed a joint motion requesting the Court's approval, which the Court granted. Docs. 72, 73. Under the settlement, the AD Defendants paid $6,000 and the TD Defendants paid $24,000. The settlement permits Plaintiffs to seek attorneys' fees and costs.

## II. Analysis.

### A. Prevailing Party.

Where the filing of an action causes a defendant to pay unpaid wages to an FLSA plaintiff, that plaintiff becomes a prevailing party entitled to attorneys' fees. *See Orozco v. Borenstein*, No. CV-11-02305-PHX-FJM, 2013 WL 4543836, at *2 (D. Ariz. Aug. 28, 2013). By virtue of the settlement, Plaintiffs and the opt-In Plaintiffs received both liquidated damages and back wages. *See* Doc. 72-1.

Defendants contend that Plaintiffs are not the prevailing party. They note that the TD Defendants admitted at the outset of litigation that there were unpaid overtime wages owed to Plaintiffs and attempted to pay the named Plaintiffs the unpaid wages and liquidated damages as early as March 2016. Plaintiffs refused the offer and continued the lawsuit seeking damages for time worked off the clock. Doc. 76 at 5 ("The key reason that the litigation moved forward from Plaintiffs' perspective was because Plaintiffs worked time off the clock and were not paid for it."); *see also* Doc. 75 at 8. In the end, Defendants note, Plaintiffs recovered nothing for time worked off the clock. Doc. 76 at 5.

Defendants' initial offers, however, were not equivalent to, or in excess of, the final settlement amount. Defendants admit that the TD Defendants' initial offer included unpaid wages and liquidated damages only for the named Plaintiffs, with nothing for the opt-in Plaintiffs. Doc. 75 at 6-7. Defendants further admit that "[i]n order to get the

matter resolved without further litigation," Defendants agreed to pay amounts not included in the original offer, including approximately $3,100 to each named Plaintiff as a class representative incentive payment and about $7,500 in collective liquidated damages to the opt-in Plaintiffs. *Id.* at 9. These amounts would not have been recovered without Plaintiffs' rejection of the initial settlement offer.

The fact that Plaintiffs recovered nothing for time worked off the clock does not change the analysis. The joint motion asking the Court to approve the settlement agreement states that "each Plaintiff and Opt-in Plaintiff in this matter will have received 100 percent or more of their unpaid overtime wages, plus equal amounts in liquidated damages, *according to Defendants' own time and compensation records.*" Doc. 72 at 3 (emphasis added). This is not an admission that no off-the-clock hours were worked, but a concession that Plaintiffs would give up those claims in exchange for avoiding prolonged litigation. *See id.* at 4 ("[A]dditional discovery and motion practice would be extremely costly and time-consuming in light of the potential additional recoverable damages," and "the risk and expense of pursuing discovery regarding the alleged off-the-clock hours worked . . . would not have been justified, given the low amounts at stake and the likelihood of delayed payment to the class.").

Defendants also argue that Plaintiffs are not the prevailing party because they refused a $10,000 settlement offer from the AD Defendants in October 2016 and received a total of $6,000 from the AD Defendants in the final settlement. Doc. 75 at 8; Doc. 76 at 6. The Court disagrees. The AD Defendants' Offer of Judgment proposed a payment of $10,000 in exchange for dismissal of claims against the AD Defendants and resolution of "attorneys' fees, taxable costs, expert witness fees and interest incurred by Plaintiffs." Doc. 76-5 at 3-4. The final settlement offer resolved only the issue of damages, not attorneys' fees and other costs. Plaintiffs are the prevailing party in this matter.

**B.     Reasonableness.**

Prevailing plaintiffs are entitled to attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b); *Haworth v. State of Nev.*, 56 F.3d 1048, 1051 (9th Cir. 1995). The

1 trial court has discretion in determining the amount of an award for attorneys' fees. To determine the reasonableness of requested fees, federal courts generally use the "lodestar" method. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). Under this method, the Court must first determine the initial lodestar figure by taking a reasonable hourly rate and multiplying it by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433.

### 1. Hourly Rate.

The "reasonable hourly rate" is not determined by the rates actually charged, but by the rate prevailing in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The relevant community is generally the forum in which the court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The party seeking an award of fees should submit evidence – in addition to the attorneys' own affidavits – supporting the rates claimed. *Hensley*, 461 U.S. at 433; *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Once the party seeking attorneys' fees presents such evidence, the opposing party "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)) (internal quotation marks omitted).

Plaintiffs' counsel submit a declaration regarding their experience, expertise, and fee rates, which counsel attests to be the average market rate. Doc. 74-1 at 2-11. Supervising attorney Michael Zoldan has been practicing employment law since November 2010 and requests an hourly rate of $300. *Id.* at 4-7, ¶¶ 6, 17. Attorney

Clifford Bendau was brought in as co-counsel because of his expertise in litigating FLSA actions. *Id.* at 5, ¶ 8. Mr. Bendau has litigated over 80 wage and hour cases and also requests an hourly rate of $300. *Id.* Attorney Jason Barrat is a partner at Zoldan Law Group, PLLC, has been licensed for 5 years, and has a practice that is "almost entirely focused on wage and hour claims on behalf of plaintiffs." *Id.*, ¶ 9. "[B]ecause Mr. Barrat's primary assistance in this case related to client communications and discovery matters, counsel have decided to reduce his hourly rate to $250 per hour solely for the purpose of this fee application." *Id.* Plaintiffs' counsel also submit the declaration of Amy Liberman, an attorney licensed to practice law in Arizona since 1984. *Id.* at 13-16. Ms. Liberman avers that she is familiar with the hourly billing rates of attorneys in the State of Arizona, and that the typical billing rates for a practitioner of Plaintiffs' counsel's caliber and experience ranges from $250 to $500 per hour. *Id.* at 16, ¶¶ 8-9.

Defendants present no evidence that the rates charged by Plaintiffs' counsel are unreasonable for lawyers with similar qualifications in Phoenix, Arizona. Nor have Defendants' counsel offered their own billing rates as a comparison. Courts in this District have found the requested amount to be reasonable for FLSA cases in the Phoenix area. *See Riendeau v. Apache Carson Partners, LP*, 2013 WL 6728141, at *1 (D. Ariz. Dec. 19, 2013) (finding $300.00 a reasonable hourly rate for a lead counsel in an FLSA case); *Orozco*, 2013 WL 4543826 at *3 (reducing plaintiff's counsel's hourly rate from $400 to $300 because "$400 an hour is in excess in comparison to an average hourly rate of $300 in the Phoenix market."). Accordingly, the Court finds that the hourly billing rates for Mr. Zoldan and Mr. Bendau are reasonable.

Similarly, the proposed hourly rate of $250 for Mr. Barrat is not excessive. Plaintiffs concede that Mr. Barrat's "assistance in this case primarily related to client communications and discovery matters" (Doc. 74 at 13), but his contributions were not so few as to be characterized as "paralegal and administrative type tasks" (Doc. 76 at 15). The records show that Mr. Barrat drafted discovery disclosures and responses, aided in calculating damages, and engaged in extensive client communication. *See* Doc. 74-3 at

2-19. Plaintiffs' proposed billing rate is at the low end of Ms. Liberman's stated range of reasonable rates. *See* Doc. 74-1 at 16, ¶ 9. The Court finds this rate reasonable.

### 2. Hours Billed.

Defendants next challenge the number of hours billed by Plaintiffs' counsel. Doc. 76 at 8-15; Doc. 75 at 11-13. Specifically, Defendants argue that much of Plaintiffs' counsels' work product should have taken little time because "this litigation is a replica of previous litigation filed by the Zoldan Law Group PLLC against the Travis Dees Defendants in 2015," and "the only new issue raised in the current litigation was the collective action request." Doc. 76 at 8. Defendants present a list of billed tasks they believe to be "prima facie unreasonable," including:

- 63.5 hours billed in total for the complaint (Doc. 76, Ex. F (26.3 hours of meetings and communication; 15.6 hours of research; and 22.4 hours spent drafting and reviewing the complaint)).

- 40.4 hours billed for the motion for conditional certification, including 10.8 hours of interoffice conferences (*Id.*, Ex. G);

- 82.6 hours constructing the response to TD Defendants' motion for summary judgment (*Id.*, Ex. H);

- 47.4 hours preparing for mediation, not including time spent calculating damages (*Id.*, Ex. I); and

- 47.2 hours preparing their application for attorneys' fees, not including the 10 hours they requested for their reply to the application for attorneys' fees (*Id.*, Ex. J (including 10.6 hours of meetings and communication; 4.5 hours on research; and 32.1 hours spent working on fee application)).

Plaintiffs respond that they "spent the requisite hours to achieve success for their clients and were successful on all matters." Doc. 77 at 10-11. Plaintiffs also note that their "motions, memoranda, and other documents submitted to this Court have few to no typographical errors, contain all necessary and accurate legal and factual support, and adhere to the Court's local rules." *Id.* at 10.

Although Plaintiffs are factually correct, the Court finds that much of Plaintiffs' counsels' billed time on the complaint and motion for attorneys' fees could have been reduced given the redundant nature of much of this litigation. Mr. Zoldan states in his declaration that he has "represented numerous employment litigation plaintiffs in both

- 7 -

Superior Court and the Federal Court for the District of Arizona[,]" and that "Mr. Bendau has litigated over 80 wage and hour cases, including FLSA collective action cases." Doc. 74-1, ¶¶ 5, 8.  A quick search of Mr. Zoldan's pending and former cases in this courthouse shows that, in the past 24 months, he has brought no fewer than 17 actions under the FLSA, many of which seek to recover unpaid overtime like this action. Additionally, Plaintiffs' counsel recently litigated a substantially similar case, minus the collective action component, against the same TD Defendants who are now party to this case. *See Bush v. Am.'s Best Tire LLC*, No. 15-cv-01261-PHX-SRB (D. Ariz. Nov. 16, 2015).  The Court has reviewed the complaints from both dockets.  Large sections are virtually identical, and appear to have been copied from one to the next, simply replacing plaintiff names and dates.  The Court finds that 63.5 hours billed for the complaint is clearly excessive.  Given the repetitive nature of a complaint and the obvious use of prior work product in the development of this complaint, the Court will reduce Plaintiffs' counsels' time billed on the drafting and review of the complaint to a total of 15 hours.

Similarly, the 57.2 total hours billed for the attorneys' fees motion is excessive. *See* Doc. 74-3 at 18-19.  The Court finds that 20 billable hours is reasonable for a motion for attorneys' fees.

Defendants also assert that Plaintiffs' counsels' "billing entries were fraught with block billing entries and confusing descriptions" in violation of LR Civ. 54.2.[3]  Doc. 76 at 9.  Defendants specify the following entries:

- 2/14/16 – Mr. Zoldan's .8 hours block billed "meeting with process server and email from process server";

- 2/26/16 Mr. Zoldan's 1.6 hours block billed for "Initial review of demand letter and threat for Rule 11 sanctions from AD attorneys; review supporting documents; email and confer with co-counsel RE same";

- 4/1/16 – Mr. Zodlan's 2.5 hours block billed for "Continue Review of TD MSJ; analyze response under Rule 56(d)";

---

[3] "The itemized statement for legal services rendered shall reflect . . . (B) The time devoted to each *individual* unrelated task performed" and "[t]he party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." LR Civ 54.2 (e)(1)(B) & (e)(2).

- 8 -

- 4/4/16 – Mr. Zoldan's 1.2 hours of duplicative researching regarding social media (Jason Barrat performed same research for 2.2 hours on 4/5/16);

- 4/7/16 – Mr. Bendau's 1.0 hour block billed for "Multiple correspondence with JB/MZ RE motion for conditional certification";

- 4/13/16 – Mr. Zoldan's .8 hours block billed for "multiple correspondences CB RE opposition to MSJ and accompanying documents";

- 6/6/16 – Mike Zoldan's 5.5 hours block billed for "Begin drafting first set of NUIs and RFPs to all Defendants (AD Defendants and TD Defendants)";

- 6/8/16- Mike Zoldan's 6.0 hours block billed for "Continue drafting NUIs and RFPs/edit/finalize";

- 7/5/16 – Mr. Bendau's 1.4 hour block billed for reviewing "AD's Second Supplemental Disclosure Statement and accompanying documents; review AD discovery responses";

- 7/8/16 – Mr. Bendau's 1.2 hours block billed for "Review/Analyze Motion for Security and potential basis for sanctions in response";

- 7/11/16 – Mr. Zoldan's 5.2 hours block billed for "Research Re TD Motion for Security Bond (includes repealing Ariz. R. 67(d) and other authority as relied upon by TD; search for cases permitting bond in FLSA action in or out of 9th circuit)";

- 7/26/16 – Mr. Zoldan's 6.6 hours block billed for "Review/Analyze Defendants response to Plaintiffs first set of discovery requests; reconcile payments made to plaintiffs by analyzing payroll records and time sheets produced thus far for damages calculations";

- Time entries with the confusing description "work on" without describing whether the work was reviewing, drafting, conducting legal research or other actions, including: 4/5/16 in the amount of $1,560.00, 4/6/16 in the amount of $1,050.00, 4/15/16 in the amount of $900.00, 7/15/16 in the amount of $420.00, 7/26/16 in the amount of $1,980.00, 8/10/16 in the amount of $150.00, 9/12/16 in the amount of $1,320.00, 10/5/16 in the amount of $300.00, 1/12/17 in the amount of $1,800.00, 1/13/17 in the amount of $1,950.00, multiple entries on 1/16/17 totaling $3,615.00 and an entry on 1/17/16 in the amount of $300.00; the grand total of fees sought of which are vague in description is not les [sic]than **$15,345.00**.

*Id.* at 9-10 (emphasis in original).

When counsel engage in block billing by grouping several tasks together, it is difficult for a court to evaluate the reasonableness of each individual task within the entry. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). After reviewing the time entries Defendants identify as block billing, the Court concludes that these entries violate LR Civ. 54.2(d). The block billing makes it difficult for the Court to

assess what fees are excessive and what fees are reasonable, and the Court will therefore reduce the amount of fees awarded by 25%. *See Shaft v. Soc. Sec. Admin. Com'r*, No. CV-13-08206-PCT-DGC, 2014 WL 3809097, at *1 (D. Ariz. Aug. 1, 2014) (holding the Court may reduce requested fees when the requesting party engaged in block billing and the Court is unable with precision to separate out fees attributable to specific motions and excessive work); *see also Hensley*, 461 U.S. at 434 (holding that fees that are excessive, redundant, or otherwise unnecessary should be excluded from a fee request).

Lastly, Defendants argue that Plaintiffs' counsels' use of a ".2 minimum billing increment" was excessive, "accounting for approximately 23.8 hours of [additional] time." *Id.* at 10-11. Defendants ask the Court to "half the value of all billing entries incorporating the minimum .2 billing increment" because such minimum billing is a "practice [that] has not been accepted by the Court." *Id.* at 11. The Court agrees that the use of a .2 minimum billing increment is improper when used in a request for attorneys' fees. Work lasting only a minute or two would, under such a practice, always be billed at 12 minutes. *See also* Ariz. Ethical Rule 1.5 cmt. [5] ("A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures."). "[T]his type of billing practice inherently inflates and distorts the time actually expended, and hence is unacceptable." *In re Price*, 143 B.R. 190, 194 (Bankr. N.D. Ill. 1992).

The Court has discretion to determine whether a minimum billing increment is excessive and to reduce the fee accordingly. *See Welch*, 480 F.3d at 948. Because the Court cannot know whether the .2 entries billed by Plaintiffs' counsel took 1 minute, 6 minutes, or 12 minutes, the Court will reduce the total value of all Plaintiffs' counsels' .2 entries by half.

### 3. Lodestar Figure.

The Court has found that $300 a reasonable hourly rate for Mr. Zoldan and Mr. Bendau, and $250 is a reasonable hourly rate for Mr. Barrat. Plaintiffs submit that these three attorneys billed 218.5 hours, 188.3 hours, and 79.3 hours respectively, for a total of 486.1 hours billed. Doc. 74-1 at 8-9, ¶ 21. The Court will reduce the billing entries that

were block billed by 25%.[4]  The Court will reduce the 23.8 hours billed in the .2 minimum increment by half.[5]  The Court will also reduce the number of hours billed drafting the complaint from 63.5 hours to 15 hours,[6] and the drafting of the attorneys' fees motion from 57.2 hours to 20 hours.[7]  After applying each of these modifications, the attorneys' adjusted total hours are as follows: 158.1 hours for Mr. Zoldan, 161.6 hours for Mr. Bendau, and 64.1 hours for Mr. Barrat.  Using these modified totals, the Court reaches a loadstar value of $111,935.[8]

### 4. The Kerr Factors Adjustment.

The Court must also consider the *Kerr* factors that have not been subsumed within the initial lodestar calculation. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).  These factors are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."  *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987).  There is a "strong presumption that the lodestar figure represents a reasonable fee, and

---

[4] The Court finds that Mr. Zoldan billed a total of 52.1 hours using block billing entries, Mr. Bendau billed a total of 6 hours using block billing entries, and Mr. Barrat billed a total of 0.6 hours using block billing entries.  After a 25% reduction, these totals are reduced to 39.1 hours, 4.5 hours, and .4 hours respectively.  The Court did not include block billing entries related to the complaint or fee application in this calculation.

[5] Using the minimum .2 increment, Mr. Zoldan billed 11.6 hours, Mr. Bendau billed 5.8 hours, and Mr. Barrat billed 6.4 hours.

[6] Mr. Zoldan's time spent working on the complaint will be reduced from 32.3 hours to 7 hours.  Mr. Bendau's time working on the complaint will be reduced from 22.7 hours to 5 hours.  And Mr. Barrat's time working on the complaint will be reduced from 8.5 hours to 3 hours.

[7] Hours spent on the attorneys' fees motion will be reduced as follows: Mr. Zoldan's from 31.3 hours to 15 hours; Mr. Bendau's from 6.6 hours to 2 hours; Mr. Barrat from 9.3 hours to 3 hours; and time spent on the reply from 10 hours to 5 hours.

[8] [(MZ adjusted hours + CB Adjusted hours)*$300 billing rate + (JB adjusted hours*$250 billing rate)] = Loadstar Value

[(158.1+161.6)*300 + (64.1*250)] = $111,935

- 11 -

1 adjustments of the lodestar are proper only in "rare" and "exceptional" cases. *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984).

Although Plaintiffs ultimately were the prevailing party, it is significant that the monetary result they obtained was just over $30,000, an amount only slightly above what was offered by Defendants to settle this case at the outset of the litigation. The Supreme Court has noted that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Hensley*, 461 U.S. at 440. The Ninth Circuit has likewise noted that "[t]he time, to be compensated in an award, must be reasonable in relation to the success achieved. It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) (quotation marks omitted) (citing *Hensley*, 461 U.S. at 436; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

At the same time, the Ninth Circuit has made clear that attorneys' fee awards should not be made strictly proportional to the amount recovered in the case. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012). It would be error for the Court to hold that the amount of fees may not exceed the value of the settlement or a portion of that value. *Id.* The determination to be made, rather, is the amount that constitutes a reasonable fee in light of all the circumstances in the case.

The Court concludes that awarding more than $110,000 in attorneys' fees for the work done in this case, given the familiarity of Plaintiffs' counsel with the issues litigated and the extent of success, would be unreasonable. In fact, in language relevant to this case, the Ninth Circuit noted that "no reasonable person would pay lawyers $148,000 to win $34,000." *McGinnis*, 51 F.3d at 810. The Court concludes that a fee award of $60,000 represents the reasonable value of the work performed by Plaintiffs' counsel. This is a considerable reduction from the lodestar amount, but the Court views this as an exceptional case where departure from the lodestar amount is warranted. Plaintiffs recovered only a modest amount in excess of the settlements offered at the beginning of

this case, and the Court cannot conclude that ten months of litigation were required to recover it. In addition, Plaintiffs did not obtain any additional non-monetary relief that would increase the value of their result.

Although it is also true that $60,000 is considerably more than the financial benefit conferred on Plaintiffs by the continuation of this litigation after the initial settlement offer, the Court cannot conclude that such an award is excessive. At least some of the litigation costs were incurred because of Defendants' litigation actions. And as the Ninth Circuit has noted, successful litigation, even with modest recoveries, can vindicate rights protected by statute. *Evon*, 688 F.3d at 1033.

**C.     Costs.**

Plaintiffs' also request $6,064.70 in costs and non-taxable costs. Doc. 74 at 15. "Under the Fair Labor Standards Act, costs ['of the action'] include reasonable out-of-pocket expenses." *Van Dyke v. BTS Container Serv., Inc.*, No. 08-cv-561-KI, 2009 WL 2997105, at *2 (D. Or. Sept. 15, 2009) (citing *Smith v. Diffee Ford–Lincoln–Mercury, Inc.,* 298 F.3d 955, 969 (10th Cir. 2002)). "Costs of the action "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." *Id.* (citing *Herold v. Hajoca Corp.,* 864 F.2d 317, 323 (4th Cir. 1988) (FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920).

Defendants argue that Plaintiffs' requested costs are excessive and inappropriate. Doc. 75 at 13-14. Specifically, Defendants object to the following costs: (1) $203.70 for obtaining a transcript of the scheduling conference; (2) $2,762.50 in sums paid to Optime Administration, a firm retained to administer the opt-in portion of the case; (3) $170 paid to attempt service on "Max Jones"; and (4) $2,500 in "overhead," a total that is not itemized or explained.

Plaintiffs do not respond to these objections in their reply brief. *See* Doc. 77. The Court agrees that the costs for overhead are unjustified. Plaintiffs state that these include "[e]stimated overhead costs for photocopying, meals, Westlaw charges, postage, [and]

1  transportation." Doc. 74-5 at 2 (Plaintiffs' Statement of Costs). But these are the costs of
2  running a law practice, and Plaintiffs provide no support for the requested amount. The
3  Court also finds the cost for a scheduling conference transcript unreasonable in light of
4  the detailed scheduling order entered by the Court after the conference. Doc. 38.

5  The Court does not find the remaining costs unreasonable. Plaintiffs include
6  documentation showing that they paid the amounts they now request. *Id.* at 4-15. The
7  Court does not find it unreasonable for Plaintiffs to have hired Optime for administration
8  of the opt-in portion of the case. Additionally, Plaintiffs' hired "Max Jones" to process
9  service on Defendants, and paid him for $170 for the task. *See id.* at 9 (Exhibit C).

10  Accordingly, the Court finds that Plaintiffs are entitled to $3,361.00 in costs.[9]

### D.   Joint and Several Liability.

12  The AD Defendants argue that they "should not be held jointly and severally
13  liable" with the TD Defendants because "Plaintiffs have failed to prove that any joint
14  employer relationship existed between the [AD] Defendants and the [TD] Defendants."
15  Doc. 76 at 3. Plaintiffs argue that "[n]otwithstanding any alleged differences between the
16  [TD] and [AD] Defendants, the clear language of the Settlement agreement forecloses
17  any argument that one defendant's obligation to pay attorneys' fees and costs differs from
18  another's," and the Agreement's use of the term "Parties" indicates that "all defendants in
19  this action should be jointly and severally responsible for payment of an award of
20  attorneys' fees." Doc. 77 at 7-8.

21  The Court disagrees. The Settlement Agreement distinguishes the AD and TD
22  Defendants by defining both at the outset. Doc. 72-1 at 1. The Settlement Agreement
23  goes on to state that "[f]or the convenience of this Settlement Agreement only and not as
24  an admission of joint or concerted efforts, the [TD] Defendants and the [AD] Defendants
25  are referred to collectively as Defendants." *Id.* Under Section 1(a) of the Settlement
26  Agreement, the terms state that the "[TD] Defendants agree to pay the sum of [$24,000],

---

[9] Costs Requested – Costs Found Unreasonable = Awarded Costs
$6,064.70 – ($2500 + $203.7) = $3,361.00

- 14 -

1  and the [AD] Defendants agree to pay the sum of [$6,000.]" *Id.* at 2.  Additionally, under
2  Section 1(e), the Settlement Agreement states that the parties were unable to reach an
3  agreement regarding the amount of reasonable attorneys' fees and costs, and have agreed
4  to ask the Court "to determine to what extent Plaintiffs' counsel are entitled to be
5  compensated for their fees and costs[.]" *Id.* at 4.  Under subsection (g), "[t]he Parties
6  further stipulate that . . . Plaintiffs' attorneys' fees and costs shall be decided by the
7  Court's Order regarding Plaintiffs' counsels' application for attorneys' fees." *Id.*  The
8  Settlement Agreement does not provide that Defendants will be jointly and severally
9  liable for the fee award.

10  Under 29 U.S.C. § 216(b), the Court in an FLSA action "shall, in addition to any
11  judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be
12  paid by the defendant, and costs of the action."  Where multiple employers are
13  responsible for the violations of the FLSA against a plaintiff, it is within the Court's
14  discretion to hold the defendants jointly and severally liable.  *Fegley v. Higgins*, 19 F.3d
15  1126, 1131 (6th Cir. 1994) ("the FLSA defines an 'employer' to include 'any person
16  acting directly or indirectly in the interest of an employer in relation to an employee'. . . .
17  [and] more than one 'employer' can be simultaneously responsible for FLSA
18  obligations.").  In this instance, there has been no finding of fact that both Defendants
19  were employers at the time of the FLSA violations, nor that both Defendants were
20  responsible for the violations.  Because the parties reached a settlement agreement, the
21  only undisputed facts are as follows: the AD Defendants sold businesses to the TD
22  Defendants in September 2013, and the named Plaintiffs worked for the AD Defendants
23  for no more than 4 out of their 36 total months of employment at issue.  These limited
24  facts are insufficient for the Court to award joint and severally liability for all attorneys'
25  fees.

26  The AD Defendants argue that these facts requires the Court to limit the AD
27  Defendants' liability to not more than 7.5% of any attorneys' fee awarded.  Doc. 76 at 4.
28  The Court disagrees.  The AD Defendants present no evidence to establish that only 7.5%

of all injuries occurred prior to October 2013, and no evidence that the unpaid overtime alleged by Plaintiffs occurred at a consistent rate over a set time period.

The Court finds that assignment of joint and several liability between Defendants is inappropriate. The only information before the Court evidencing the respective liability of the Defendants is the amount each agreed to pay in the settlement. Accordingly, the Court finds each Defendant will be accountable for the amount of attorneys' fees proportional to its agreed amount to be paid in settlement.[10]

### E. Marital Community Liability.

The TD Defendants argue that "any award entered in favor of Plaintiffs against [TD] Defendants . . . should not include Travis Dees' wife or his marital community" because "Mrs. Dees was never served in this matter and is not a party." Doc. 75 at 14. Plaintiffs do not respond to this argument in their reply. In Arizona, a party wishing to hold a marital community accountable for any obligation must sue both spouses jointly. *Weimer v. Maricopa Cty. Cmty. Coll. Dist.*, 184 F.R.D. 309, 310 (D. Ariz. 1998) ("Under Arizona community property law, a 'judgment against one spouse does not bind the community.'") (citing *Spudnuts, Inc. v. Lane*, 676 P.2d 669, 670 (Ariz. 1984)). Travis Dees' spouse is not a party in this action. Accordingly, Travis Dees' marital community will not be bound by the Court's judgment of attorneys' fees.

**IT IS ORDERED:**

1. Plaintiffs' motion for attorneys' fees and non-taxable expenses (Doc. 74) is **granted in part and denied in part**. Plaintiff is awarded $60,000 in attorneys' fees and $3,361.00 in costs against Plaintiff.

2. The TD Defendants are responsible for 80% of the total attorneys' fees and costs ($50,688.80).

---

[10] In the Settlement Agreement, the TD Defendants agreed to pay $24,000, and the AD Defendants agreed to pay $6,000. Doc. 72-1 at 2, § 1. Accordingly, the TD Defendants will be accountable for 80% of the attorneys' fees and the AD Defendants will be accountable for the remaining 20%.

3. The AD Defendants are accountable for 20% of the total attorneys' fees and costs ($12,672.20).

Dated this 5th day of April, 2017.

_____
David G. Campbell
United States District Judge